FRANK N. DARRAS #128904, Frank@DarrasLaw.com
LISSA A. MARTINEZ #206994, LMartinez@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com
DARRASLAW
3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone:   (909) 390-3770
Facsimile:   (909) 974-2121

Attorneys for Plaintiff
MARGARET PLOOF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| MARGARET PLOOF, | Case No:) |
|---|---|
| Plaintiff, | |
| vs. | COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | |
| Defendant. | |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3. Plaintiff is informed and believes and thereon alleges that Carrington Mortgage Holdings, LLC. Long Term Disability Plan ("Plan") is an employee welfare benefit plan established and maintained by Carrington Mortgage Holdings, LLC. to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, Margaret Ploof ("Plaintiff" and/or "Ms. Ploof"), with income protection and continued life insurance coverage in the event of a disability and is the Plan Administrator.

4. Plaintiff alleges upon information and belief that Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

5. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that Defendant LINA, who fully insured the policy and who is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about November 1, 1956, LINA has been registered as a corporation with the State of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

6. At all relevant times Plaintiff was a resident and citizen of the United States, an employee of Carrington Mortgage Holdings, LLC., its successors, affiliates and/or subsidiaries, and a participant in the Plan.

7. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number LK-0963868 and group life insurance policy number FLX-965586 that had been issued by Defendant LINA to Carrington Mortgage Holdings, LLC. to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

8. LINA both funds and decides whether claimants will receive benefits under the Plan and as such suffers from a structural conflict which requires additional skepticism.



9. Based upon information and belief, Plaintiff alleges that, according to the terms of the Plans, if Plaintiff became disabled, LINA promised to pay long term disability benefits to Plaintiff as follows:

- Benefit Waiting Period: 90 days.
- Disability Benefit: The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit.
- Minimum Disability Benefit: $100
- Maximum Benefit Period: Employee's 65th birthday.
- Definition of Disability/Disabled:
  - The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
    - 1. unable to perform the material duties of his or her Regular Occupation; and
    - 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
  - After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
    - 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
    - 2. unable to earn 80% or more of his or her Indexed Earnings.

10. Prior to her disability under the terms of the Plan, on or about January 14, 2014, Plaintiff, who had been employed with Carrington Mortgage Holdings, LLC., was working as Mortgage Underwriting Manager.

11. However, Plaintiff became disabled under the terms of the Plan and timely submitted a claim to LINA for payment of disability benefits.

12. LINA initially approved and paid Plaintiff's LTD benefits.

13. However, on or about February 18, 2016, LINA unreasonably and unlawfully denied Plaintiff's claim. And, on or about November 11, 2016, LINA unreasonably and unlawfully upheld its denial of Plaintiff's claim.

14. According to LINA's denial letters:

- **February 18, 2016 (LTD)**: "We have completed our review and determined that you no longer remain disabled as defined by your policy."
- **February 18, 2016 (LWOP)**: "After completing our review of your claim, we are unable to continue your claim for waiver of premium of life insurance coverage."
- **November 11, 2016 (LTD)**: "After completing our review of the claim, we must uphold our prior decision to deny her claim...A second appeal request is not required but will be accepted if your client has different or additional information to submit...Your client has the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal."
- **November 11, 2016 (LWOP)**: "After completing our review of your client's claim, we must uphold our prior decision to deny her claim...A second appeal request is not required but will be accepted if your client has different or additional information to submit...Your client has the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal"

15. In so doing, LINA unreasonably and unlawfully relied upon the opinions of physicians who were financially biased and/or not qualified to refute the findings of Plaintiff's board certified physicians; relied strictly upon physical requirements of

occupation instead of taking into consideration the non-exertional requirements of Plaintiff's own, or any, occupation; and misrepresented the terms of the Policy.

16. Additionally, LINA knew, or should have known, that the documentation submitted to and/or obtained by LINA clearly substantiated Plaintiff's disability, including, but not limited to, the following:

January 15, 2014 Removal of Rods and Screws from L4-5 Fusions

February 10, 2014 Attending Physician Statement from Plaintiff's Treating Provider
- Not fit for work.

March 6, 2014 Attending Physician Statement from Plaintiff's Treating Provider
- Not fit for work.

March 6, 2014 MRI of the Lumbar Spine
- IMPRESSION:
  - Interval development of a large fluid collection spanning the levels of the L3-S1 vertebral bodies extending into the intervertbral disc spaces with enhancement of the paraspinal muscles.

March 13, 2014 Removal of Fluid from 1/15 Surgery

April 9, 2014 Chest X-Ray
- Impression:
  - bibasilar increase in interstitial marking, right greater than left, consistent with the history provided of sarcoidosis.

April 9, 2014 Bone Density Scan
- Impression: Osteopenia

June 11, 2014 Removal of Fluid from 1/15 Surgery

July 1, 2014 Removal of Fluid from 1/15 Surgery

September 16, 2014 Office Visit Note from Plaintiff's Treating Provider
- Physical findings:
  - Neurological: gait abnormality
  - General appearance: appeared uncomfortable standing

- Musculoskeletal: sitting posture was uncomfortable.
- Plan: she is fully and permanently disabled.

October 24, 2014 Attending Physician Statement from Plaintiff's Treating Provider

- Fully and permanently disabled.

January 29, 2015 Office Visit Note from Plaintiff's Treating Provider

- P/E:
  - Musculoskeletal:
    - uses a cane with ambulation and transfer of left foot.
    - Unable to perform heel or toe walking.
  - Motor exam:
    - Left hip flexor: 3/5
    - DTR 1+ x 4 extremities

March 5, 2015 X-ray of Cervical Spine

- Findings: degenerative disc disease at C4-5 and C5-6.

March 5, 2015 X-ray of Lumbar Spine

- Findings: 3mm anterolisthesis L4-5.

March 5, 2015 CT Myelogram-Cervical Spine

- Impression:
  - Degenerative disc disease C4-5, C5-6, C6-7. Disc osteophyte complex at C4-5 abuts the ventral cord without mass effect and causes mild left foraminal narrowing.
  - Disc osteophyte complex at C5-6 narrows the ventral CSF. Moderate left and mild right foraminal stenosis.

March 5, 2015 CT Myelogram Thoracic Spine

- Impression:
  - Superior endplate compression fractures at T3, T4, T5, T7 and T10.
  - Mild to moderate degenerative disc disease within the mid to lower thoracic spine.

March 5, 2015 CT Myelogram Lumbar Spine
- Impression:
  - Prior L4-S1 fusion. There is solid osseous fusion posteriorly at L4-5. Questionable osseous fusion at L5-S1. 10mm residual anterolisthesis L5 on S1 results in moderate to severe bilateral foraminal narrowing.
  - No Spinal canal or foraminal narrowing throughout the remainder of the lumbar spine.

April 7, 2015 Office Visit Note from Plaintiff's Treating Provider
- Physical exam:
  - Musculoskeletal:
    - Significant lower thoracic and lumbar tenderness to the lightest touch.
    - Bilateral S1 joint tenderness
    - Straight leg raising bilaterally bothers her knees and radiates pain from her low back into her legs.

April 12, 2015 to April 14 2015 Hospital Note
- Physical exam:
  - Neuro:
    - Left facial droop is present
    - Weakness to left arm 3/5
    - Plantar and dorsiflexion strength 3/5

April 12, 2014 CT of the brain
- Findings: acute right hemispheric infarct.

April 12, 2015 MRI of the brain
- Impression: moderate to large acute right MCA territory infarct involving the perisylvian gyrus.

May 7, 2015 Office Visit Note from Plaintiff's Treating Provider
- Physical exam:
  - Musculoskeletal:

- Single point cane with antalgic gait
- Multiple bands of muscle spasms across bilateral trapezius and neck muscles
- Tenderness with palpitation of paraspinal muscles from the neck to the lower back.

June 3, 2015 Office Visit Note from Plaintiff's Treating Provider

- Physical exam:
  - Musculoskeletal:
    - Single point cane with antalgic gait
    - + SLR on the left

June 15, 2015 Office Visit Note from Plaintiff's Treating Provider

- Objective:
  - Neurological: weakness of the left side compared to the right.

July 21, 2015 Office Visit Note from Plaintiff's Treating Provider

- Physical exam:
  - Musculoskeletal:
    - Single point cane with antalgic gait
    - + SLR on the left
    - Tenderness at the lateral left hip and greater trochanter
    - + Faber test bilaterally, left > right

August 28, 2015 Permanent spine stimulator implantation

September 29, 2015 Office Visit Note from Plaintiff's Treating Provider

- Physical exam:
  - Musculoskeletal:
    - + SLR
    - Antalgic gait with single point cane

December 14, 2015 Office Visit Note from Plaintiff's Treating Provider

- P/E:

COMPLAINT

- Bilateral lower extremity edema

January 28, 2016 X-Ray of Left Knee

- Findings:
  - Severe patellofemoral osteoarthritis with joint space narrowing and osteophyte formation and cystic changes along trochlear groove moderate osteoarthritis of the medial and lateral compartments with joint space narrowing and ostephyte formation.

March 16, 2016 Left Knee Total Arthroplasty

June 29, 2016 Office Visit Note from Plaintiff's Treating Provider

- P/E:
  - Lumbar spine:
    - decreased extension
    - Paravertebral muscular tenderness
    - S1 joint tenderness
  - Neurological exam:
    - Motor strength: diminished left
    - Gait: irregular gait

July 25, 2016 Office Visit Note from Plaintiff's Treating Provider

- P/E:
  - Constitutional: irregular gait
  - Musculoskeletal:
    - decreased extension
    - Paravertebral muscular tenderness
    - S1 joint tenderness
    - Swelling over lower lumbar spine
  - Neurological exam:
    - Motor strength: diminished left
    - Gait: irregular gait

August 29, 2016 Office Visit Note from Plaintiff's Treating Provider
- P/E:
  - Lumbar spine:
    - decreased extension
    - Paravertebral muscular tenderness
    - S1 joint tenderness
  - Neurological exam:
    - Motor strength: diminished left
    - Gait: irregular gait

17. To date, even though Plaintiff has been disabled, LINA has not paid Plaintiff any disability benefits under the Policy since on or about April 15, 2016. The unlawful nature of LINA's denial decision is evidenced by, but not limited to, the following:

- LINA engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to: failing to timely advise Plaintiff of what specific documentation it needed from her to perfect her claim; and, failing to provide a complete copy of all documents, records, and other information relevant to her claim despite a request by Plaintiff in violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);
- LINA ignored the obvious, combed the record and took selective evidence out of context as a pretext to deny Plaintiff's claim; and,
- LINA ignored the opinions of Plaintiff's board certified treating physicians and/or misrepresented the opinions of Plaintiff's treating physicians. Deference should be given to the treating physicians' opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file. Further, LINA's highly conflicted

- 10 -
COMPLAINT

physicians' opinions do not serve as substantial evidence, as they are not supported by evidence in the claim file, were not issued by physicians with the same level of medical expertise as the board certified treating physicians, nor are they consistent with the overall evidence in the claim file.

18. For all the reasons set forth above, the decision to deny disability insurance benefits was wrongful, unreasonable, irrational, sorely contrary to the evidence, contrary to the terms of the Plan and contrary to law. Further, LINA's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

19. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

20. As a direct and proximate result of LINA's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about April 15, 2016 to the present date.

21. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

22. A controversy now exists between the parties as to whether Plaintiff is



1  disabled as defined in the Plan.  Plaintiff seeks the declaration of this Court that he
2  meets the Plan's definitions of disability and consequently she is entitled to all benefits
3  from the Plan to which she might be entitled while receiving disability benefits which
4  included, but are not limited to reimbursement of all expenses and premiums paid for
5  such benefits from the termination of benefits to the present.  In the alternative, Plaintiff
6  seeks a remand for a determination of Plaintiff's claim consistent with the terms of the
7  Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid to Plaintiff beginning on or about April 15, 2016, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; continued life insurance coverage provided under the plan; plus all other benefits from the Plan to which she might be entitled while receiving disability benefits which included but are not limited to reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plans;

2. An order determining Plaintiff is entitled to future disability payments/benefits and continued life insurance coverage  provided under the plan so long as she remains disabled as defined in the Plan;

3. For reasonable attorney fees incurred in this action; and,

4. For such other and further relief as the Court deems just and proper.

Dated:  January 13, 2017

DarrasLaw

_____
PHILLIP S. BATHER
Attorneys for Plaintiff
MARGARET PLOOF

COMPLAINT